**KNAPP & ROBERTS, P.C.**
Craig A. Knapp, Esq. (SBN 013580)
knapp@krattorneys.com
David S. Friedman, Esq. (SBN 029943)
friedman@krattorneys.com
8777 North Gainey Center Drive, Suite 165,
Scottsdale, Arizona 85258
Tel: (480) 991-7677

**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
100 Pine St., Ste 1250, San Francisco, CA 94111
Tel: (858) 375-7385
Fax: (888) 422-5191
*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT BY AND FOR THE

## PHOENIX DIVISION DISTRICT OF ARIZONA

| | |
|---|---|
| Sue Tetef, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>  vs.<br><br>PracticeMax, Inc., a Delaware corporation; and Does 1 through 100, inclusive,<br><br>     Defendants. | **CLASS ACTION**<br>Case No:<br><br>**CLASS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATIONS OF:**<br><br>**(1) THE CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CIVIL CODE §§ 56, *ET SEQ*.);**<br>**(2) CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*;**<br>**(3) CALIFORNIA CONSUMER RECORDS ACT, Cal. Civ. Code § 1798.82, *et seq.*;**<br>**(4) NEGLIGENCE;**<br>**(5) NEGLIGENCE PER SE;**<br>**(6) BREACH OF CONTRACT;**<br>**(7) MISREPRESENTATION;**<br>**(8) BREACH OF FIDUCIARY DUTY; and**<br>**(9) INVASION OF PRIVACY.**<br><br>**DEMAND FOR JURY TRIAL** |

Class Action Complaint

Class Representative Sue Tetef  ("Class Representative" or "Plaintiff"), by and through her attorneys, individually and on behalf of others similarly situated, alleges upon information and belief as follows:

**I.**

**INTRODUCTION**

1.    Under the Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.* (hereinafter referred to as the "Act"), Plaintiff and all other persons similarly situated, had a right to keep their personal medical information provided to Defendants PracticeMax, Inc. ("PracticeMax," "Defendant," or "Defendants") confidential.  The short title of the Act states, "The Legislature hereby finds and declares that persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved.  It is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." The Act specifically provides that "a provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization...." Civil Code. § 56.10(a).  The Act further provides that "Every provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons,

2

destroys, or disposes of medical records shall be subject to the remedies ... provided under subdivisions (b) ... of Section 56.36."  Civil Code § 56.101(a).

2.      Civil Code § 56.36(b) provides Plaintiff, and all other persons similarly situated, with a private right to bring an action against Defendant for violation of Civil Code § 56.101 by specifically providing that "[i]n addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph*, it shall not be necessary that the plaintiff suffered or was threatened with actual damages*. (2) The amount of actual damages, if any, sustained by the patient."  (Emphasis added.)

3.      This class action is brought on behalf of Plaintiff and a putative class defined as all citizens of the State of California who provided their information to PracticeMax, Inc. on or before April 17, 2021, and who received notices from PracticeMax that their information was compromised ("Breach Victims," the "Class," or the "Class Members").

4.      As alleged more fully below, Defendant created, maintained, preserved, and stored Plaintiff and the Class members' personal medical information onto the Defendant's computer network prior to April 17, 2021.  Due to Defendant's mishandling of personal medical information recorded onto the Defendant's computer network, there was an unauthorized release of Plaintiff and the Class members' confidential medical information that occurred between April 17, 2021 and May 5, 2021, in violation of Civil Code § 56.101 of the Act.

5.    As alleged more fully below, Defendant negligently created, maintained, preserved, and stored Plaintiff and the Class members' confidential medical information in a non-encrypted format onto a data server which became accessible to an unauthorized person, without Plaintiff and the Class members' prior written authorization. This act of providing unauthorized access to Plaintiff and the Class Members' confidential medical information onto the internet continuously constitutes an unauthorized release of confidential medical information in violation of Civil Code § 56.101 of the Act.  Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Class Representative, individually and on behalf of others similarly situated, seeks nominal damages of one thousand dollars ($1,000) for each violation under Civil Code § 56.36(b)(1).   Additionally, Class Representative, individually and on behalf of others similarly situated, seeks injunctive relief for unlawful violations of Business and Professions Code §§ 17200, *et seq*.

6.    Class Representative does not seek any relief greater than or different from the relief sought for the Class of which Plaintiff is a member. The action, if successful, will enforce an important right affecting the public interest and would confer a significant benefit, whether pecuniary or non-pecuniary, for a large class of persons.   Private enforcement is necessary and places a disproportionate financial burden on Class Representative's stake in the matter.

## II.

## <u>JURISDICTION AND VENUE</u>

7.    This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d), in that Plaintiff and the Class are citizens

Class Action Complaint

of the State of California, and Defendants are citizens of the State of Delaware with their principal place of business in Phoenix, Arizona.

8.     At all relevant times, Plaintiff and the Class Members are citizens of the State of California who utilized Defendants' pathology services in California.  At all relevant times, Plaintiff and the Class Members, through their physicians and/or employers, utilized Defendants' services to provide testing for, among other things, COVID-19 testing, drug testing, and other pathology services.

9.     The Court also has personal jurisdiction over the parties because Defendants have transacted business within this judicial district; and the violations of law herein described have been committed within this judicial district. Moreover, by having principal office and doing business in this judicial district and committing violations in this judicial district, Defendants' conduct has had an adverse effect upon the finances of residents of this judicial district.

## III.

## PARTIES

### A.     PLAINTIFF

10.     Class Representative Sue Tetef is a resident of the State of California.  At all times relevant, Plaintiff was a patient of Fast Track Urgent Care, which obtained technology support from PracticeMax.  The information provided by Plaintiff to PracticeMax through Fast Track included Plaintiff's medical information. Thus, Plaintiff was a patient, as defined by Civil Code § 56.05(k). Plaintiff's individual identifiable medical information derived by Defendant in electronic form was in possession of Defendant, including but not limited to Plaintiff's medical history, mental or physical condition, or treatment, including diagnosis

5

and treatment dates. Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff's name, date of birth, addresses, medical record number, insurance provider, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals Plaintiff's identity. Since Defendant obtained Plaintiff's information, Plaintiff has received numerous solicitations by mail and phone from third parties at an address and phone number she only provided to Defendant. Since the Data Breach, Plaintiff received phone calls from persons who had her medical ID number and other medical information (such as prescription medication), who where not connected to Plaintiff's medical providers. Plaintiff is informed and believes that these individuals received her medical information from the Data Breach, and that they are acting on it.

11.     Plaintiff received from Defendant a notification that her personal medical information and her personal identifying information were disclosed when an unauthorized person gained access to Defendant's servers.

**B.     DEFENDANT**

12.     Defendant PracticeMax, Inc. is a business management and information technology solutions company. It provides services including billing, consulting, registration, and other solutions to companies like Fast Track Urgent Care. It is a Delaware corporation with its principal place of business located at 1440 E Missouri Ave, C200, Phoenix, AZ, 85014. Defendant operates throughout the States of California and Arizona. Indeed, on its website, Defendant advertises that it has numerous clients within the State of California.

13.    Defendant PracticeMax is an information technology company, a general business corporation doing business in the States of California and Arizona, that, inter alia, maintains internet platforms and stores and assesses data in order to provide business management and information technology solutions to a diverse mix of health care providers throughout the country on a contract basis, with access provided to these health care providers to evaluate and monitor the data provided. PracticeMax also provides software applications and technology support to these healthcare providers.

14.    At all times relevant, Defendant PracticeMax is a "provider of health care" as defined by Civil Code § 56.05(m), Civil Code §56.06(a), or a contractor as defined by Civil Code §56.05(d).  Prior to April 17, 2021, Defendant created, maintained, preserved, and stored Plaintiff and the Class members' individually identifiable medical information onto Defendant's computer network, including but not limited to Plaintiff and the Class members' medical history, mental or physical condition, or treatment, including diagnosis and treatment dates.  Such medical information included or contained an element of personal identifying information sufficient to allow identification of the individual, such as Plaintiff and the Class members' names, dates of birth, addresses, medical record numbers, insurance providers, electronic mail addresses, telephone numbers, or social security numbers, or other information that, alone or in combination with other publicly available information, reveals Plaintiff and the Class members' identities.

## C.    DOE DEFENDANTS

15.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 100, inclusive, are currently unknown to the Plaintiff, who therefore sues the Defendants by such fictitious names under

the Code of Civil Procedure § 474.  Each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will seek leave of court and/or amend this complaint to reflect the true names and capacities of the Defendants designated hereinafter as DOES 1 through 100 when such identities become known.  Any reference made to a named Defendant by specific name or otherwise, individually or plural, is also a reference to the actions or inactions of DOES 1 through 100, inclusive.

**D.    AGENCY/AIDING AND ABETTING**

16.    At all times herein mentioned, Defendants, and each of them, were an agent or joint venturer of each of the other Defendants, and in doing the acts alleged herein, were acting with the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced and/or authorized the wrongful acts of each co-defendant, and/or retained the benefits of said wrongful acts.

17.    Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff and the Class, as alleged herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

/ / /

Class Action Complaint

**IV.**

**FACTUAL ALLEGATIONS**

**A.      The Data Breach**

18.     Defendant PracticeMax, Inc. is a business management and information technology solutions company. It is an information technology company, a general business corporation doing business in the States of California and Arizona, that, inter alia, maintains internet platforms and stores and assesses data in order to provide business management and information technology solutions to a diverse mix of health care providers throughout the country. It provides services including billing, consulting, registration, and other solutions to companies like Fast Track Urgent Care. With data stored regarding its patients nationwide, PracticeMax collects a significant amount of sensitive data from current and former patients, as delineated above.

19.     Defendant PracticeMax provides these services to health care providers throughout the country on a contract basis, with access provided to these health care providers to evaluate and monitor the data provided. PracticeMax also provides software applications and technology support to these healthcare providers.

20.     According to its website https://practicemax.com/solutions-we-offer/, PracticeMax provides the following services:

　　　　　a.  Billing – helping clients get more reimbursement – faster;

　　　　　b.  Business Intelligence – providing clients with actionable business intelligence fueled by web-based reporting;

　　　　　c.  Coding – helping clients achieve maximum revenue with optimal coding and documentation;

9

d.  Compliance – helping clients reduce risk, optimize processes, and boost reimbursement;

e.  Contracting – helping clients negotiate and maximize contracts with payers;

f.  EHR Systems – providing clients with flexible solutions that support a healthy cash flow;

g.  Electronic Payment Processing – helping clients accelerate cash flow and enhance patient satisfaction;

h.  Satisfaction Research – turning data into actionable intelligence;

i.  Practice Management – allowing clients to take care patients as PracticeMax takes care of the rest; and

j.  ICD-10 Resource Page – a page that provides physician and provider groups with a one stop resource for ICD-10 information, resources, and training.

21.    While PracticeMax primarily works with health care providers to provide business management and information technology solutions, and thus, may not be defined as a medical health provider under Civil Code §56.05, its services of collecting medical information on thousands, if not millions, of patients is sufficient for PracticeMax to be classified as a medical provider under Civil Code § 56.06.

22.    Specifically, Civil Code §56.06 states:

(a) Any business organized for the purpose of maintaining medical information, as defined in subdivision (j) of Section 56.05, in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing

10

the individual to manage his or her information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care subject to the requirements of this part. However, this section shall not be construed to make a business specified in this subdivision a provider of health care for purposes of any law other than this part, including laws that specifically incorporate by reference the definitions of this part.

(b) Any business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information, as defined in subdivision (j) of Section 56.05, in order to make the information available to an individual or a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part. However, this section shall not be construed to make a business specified in this subdivision a provider of health care for purposes of any law other than this part, including laws that specifically incorporate by reference the definitions of this part.

(c) Any business that is licensed pursuant to Division 10 (commencing with Section 26000) of the Business and Professions Code that is authorized to receive or receives identification cards issued pursuant to Section 11362.71 of the Health and Safety Code or information contained in a physician's recommendation issued in accordance with Article 25 (commencing with Section 2525) of Chapter 5 of Division 2 of the Business and Professions Code shall be deemed to be a provider of health care subject to the requirements of this part. However, this section shall not be construed to make a business specified in this subdivision a provider of health care for purposes of any law other than this part, including laws that specifically incorporate by reference the definitions of this part.

(d) Any business described in this section shall maintain the same standards of confidentiality required of a provider of health care with respect to medical information disclosed to the business.

(e) Any business described in this section is subject to the penalties for improper use and disclosure of medical information prescribed in this part.

23.     In order to perform these functions described in paragraph 18 above, PracticeMax regularly collects medical information from health care providers, including personally identifiable information and medical information, including the diagnosis and treatment plans. To that end, PracticeMax operates as either a contractor performing

11

administrative functions, as described in Civil Code §§56.10 (d), 56.26, or a medical provider under Civil Code §56.05(m) and §56.06(a) or (b). PracticeMax is also considered a "recipient" of medical information as defined by Civil Code §56.13.

24.     Whether deemed as a medical provider, contractor, administrator, or recipient, PracticeMax, who had access to the mental health records (defined as "sensitive services" under Civil Code §56.05(n)), had an affirmative duty under Civil Code §§56.10 and 56.101 to not disclose the confidential medical record to anyone without proper authorization.

25.     At all pertinent times, Plaintiff and Class Members were patients or former patients of various health care providers in the State of California whose Private Information and other sensitive data were collected and stored by PracticeMax and provided to the respective health care providers.

26.     On or around August 5, 2022, Defendant issued a letter (the "Notice") to individuals, including Plaintiff, providing, for the first time, a notice "about a data incident at PracticeMax," in a system it maintained for health care providers like Fast Track Urgent Care and which contained personally identifiable information and protected health information of patients.

27.     In the Notice, Defendant notified consumers that when it became aware of the unusual activity on May 1, 2021, it "promptly commenced an investigation and identified ransomware on certain systems. We disconnected our systems and partnered with subject matter specialists to assist with our investigation and to confirm the security of our network. We began restoring the network and business operations, and we implemented additional security policies and controls. We also communicated the incident to our customers."

Class Action Complaint

28.    More than one year and three months later or on August 5, 2022, Defendant sent  the Notice stating that "The investigation determined the PracticeMax network was subject to unauthorized access beginning on April 17, 2021 until May 5, 2021 and during that time one server was accessed and certain files may have been removed. The investigation also identified unauthorized access to a limited number of company email accounts. We reviewed the server and email accounts for sensitive information and determined these systems may have contained sensitive information at the time of the incident. … the review of the involved systems identified information including your name, date of birth, diagnosis, physician's name, medical record number, treatment information, and patient account number."  (the "Data Breach").

29.    The Notice went on to say that as a result of the review, it was determined that some of Plaintiff and the Class Members' information may have been involved. Defendant confirmed that some of Plaintiff's information were present in the files that were illegally accessed from Defendant's server.  Defendant failed to state in its Notice when it identified that Plaintiff's information was included in the Data Breach.  Not surprisingly, the Notice did not mention that the method by which the information was stored provided easy access to threat actors.

30.    Yet, despite knowing many patients were in danger, Defendant did nothing to warn Breach Victims until more than one year and three months after it discovered the Data Breach and almost one year and four months after the actual date of the Data Breach, an unreasonable amount of time under any objective standard. During this time, cyber criminals had free reign to surveil and defraud their unsuspecting victims. Defendant apparently chose to complete its internal investigation and develop its excuses and speaking points before

13

giving class members the information they needed to protect themselves against fraud and identity theft.

31.     During its investigation, Defendant discovered that "the review of the involved systems identified information including your name, date of birth, diagnosis, physician's name, medical record number, treatment information, and patient account number." By definition, the information the Notice states was affected by the breach included confidential medical information regarding "sensitive services." as defined by Civil Code §56.05(i) and (n).

32.     This was a staggering coup for cyber criminals and a stunningly bad showing for Defendant. It would be even worse if the Breach Victims are minors as this data breach will likely affect them for their entire lives.

33.     It is apparent from Defendant's Notice that Plaintiff's confidential medical information regarding sensitive services contained within the server was not encrypted or was inadequately protected.

34.     In spite of the severity of the Data Breach, Defendant has done very little to protect Breach Victims. In the Notice, Defendant states that it is notifying Breach Victims and it encourages the Breach Victims to remain vigilant against incidents of identity theft and fraud, and to review their account statements and explanation of benefits forms, and to monitor their free credit reports for suspicious activity, and to detect errors. In effect, shirking its responsibility for the harm it has caused and putting it all on the Breach Victims. The threat of outside use of this information for malicious purposes will follow Plaintiff and the Class Members around for the rest of their entire lives.

35.    In violation of their duties, their contracts with health care providers, and pledges made to the public, Defendant failed to adequately safeguard Plaintiff and Class members' Personal and Medical Information, allowing cyber criminals to access this wealth of priceless information and use it for more than one year and three months before Defendant warned the criminals' victims, the Breach Victims, to be on the lookout. As such, Plaintiff and the Class members were unable to take steps to protect themselves from further harm.

36.    Defendant failed to spend sufficient resources on monitoring external incoming emails and training its employees to identify email-born threats and defend against them.

37.    Moreover, Plaintiff has reason to believe that her information was viewed by threat actors, and then sold to third parties who also viewed her confidential medical information received by Defendant's negligent disclosure in violation of Civil Code §56.101. Specifically, Plaintiff has received numerous phone calls from solicitors and other odd phone calls. Thus, Plaintiff is informed and believes that not only was her confidential medical information stolen, but it was actually viewed.

38.    Plaintiff is also informed and believes that the failure of Defendant to encrypt data allowed threat actors to view and steal the confidential medical information of the Class Members – indeed, it was this data that was the target of the threat.

39.    Defendant had obligations created by the Health Insurance Portability and Accountability Act ("HIPAA"), the Confidentiality of Medical Information Act ("CMIA"), reasonable industry standards, its own contracts with its patients and employees, common law, and its representations to Plaintiff and Class members, to keep their Personal and Medical Information confidential and to protect the information from unauthorized access.

40.     Plaintiff and Class members provided their Personal and Medical Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

41.     Indeed, as discussed below, Defendant promised Plaintiff and Class members that it would do just that.

**B.     Defendant Expressly Promised to Protect Personal and Medical Information**

42.     As part of Defendant's contracts with the various and several health care providers, of which Plaintiff and Class Members were foreseeable third-party beneficiaries, the health care providers were required to agree to Defendant's Privacy Policy, Terms of Use, Payment Authorization, and Consent to Electronic Transactions and Disclosures.

43.     Defendant provides all clients, including Plaintiff and Class members, its Company Privacy Policy, which states that:

1. ACKNOWLEDGEMENT AND ACCEPTANCE OF TERMS

PracticeMax is committed to protecting your privacy. …

3. INFORMATION WE COLLECT AND HOW WE USE IT …

c. Information Provided by Users …

We will not disclose personally identifiable information we collect from you to third parties without your permission except to the extent necessary [1]

44.     Notwithstanding the foregoing assurances and promises, Defendant failed to protect the Personal and Medical Information of Plaintiff and other Class members from

---

[1] PracticeMax, "Privacy Policy," https://practicemax.com/privacy-policy/ , last visited on May 18, 2023.

Class Action Complaint

cyber criminals using relatively unsophisticated means to dupe its patients, as conceded in the Notice to the Breach Victims.

45.     Defendant has failed to maintain the confidentiality of Private Information and other data, failed to prevent cybercriminals from access and use of Private Information and other data, failed to avoid accidental loss, disclosure, or unauthorized access to Private Information and other data, failed to prevent the unauthorized disclosure of Private Information and other data, and failed to provide security measures consistent with industry standards for the protection of PII and other data, of current and former patients whose data Defendant has collected and stored.

46.     If Defendant truly understood the importance of safeguarding patients' Personal and Medical Information, it would acknowledge its responsibility for the harm it has caused, and would compensate class members, provide long-term protection for Plaintiff and the Class, agree to Court-ordered and enforceable changes to its cybersecurity policies and procedures, and adopt regular and intensive training to ensure that a data breach like this never happens again.

47.     Defendant's data security obligations were particularly important given the known substantial increase in data breaches, including the recent massive data breach involving Independent Living Systems Health, UHC San Joaquin Valley, Lincare, Illuminate Education, Horizon Actuarial Services, Partnership HealthPlan of California, Bako Diagnostics, Rite Aid, Discovery Practice Management, Fairchild Medical Center, Scripps Health, HealthNet, LabCorp, Quest Diagnostics, and American Medical Collections Agency. And given the wide publicity given to these data breaches, there is no excuse for

Class Action Complaint

Defendant's failure to adequately protect Plaintiff and Class members' Personal and Medical Information.

48.    That information, is now in the hands of cyber criminals who will use it if given the chance. Much of this information is unchangeable and loss of control of this information is remarkably dangerous to consumers.

49.    Since at least 2015, the Federal Bureau of Investigation ("FBI") has specifically advised private industry about the threat of "Business E-Mail Compromise" ("BEC"). The FBI calls BEC "a growing financial fraud that is more sophisticated than any similar scam the FBI has seen before and one—in its various forms—that has resulted in actual and attempted losses of more than a billion dollars to businesses worldwide." The FBI notes that "scammers' methods are extremely sophisticated," and warns companies that "the criminals often employ malware to infiltrate company networks."[2]

50.    Accordingly, Defendant knew, or should have known, given the vast amount of Private Information and other data it collects, manages, and maintains, that they were targets of security threats, and therefore understood the risks posed by unsecure data security practices and systems. Defendant's failure to heed warnings and to otherwise maintain adequate security practices resulted in this Data Breach.

51.    Defendant, at all relevant times, had a duty to Plaintiff and Class members to properly secure their Private Information and other data, encrypt and maintain such information using industry standard methods, train their employees, utilize available

---

[2] BUSINESS E-MAIL COMPROMISE: AN EMERGING GLOBAL THREAT, https://www.fbi.gov/news/stories/business-e-mail-compromise (last visited October 20, 2022).

Class Action Complaint

technology to defend their systems from invasion, act reasonably to prevent foreseeable harm to Plaintiff and Class members, and promptly notify the respective health care providers, Plaintiff and Class members when Defendant became aware of the potential that Plaintiff's and Class Members' Private Information and other data may have been compromised.

52.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted Defendant with their Private Information and other data by virtue of being patients at the respective health care providers with which Defendant had contracted to provide services, and by virtue of Federal, State and local statutes and regulations. Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite their obligation to protect such information. Accordingly, Defendant breached their common law, statutory, and other duties owed to Plaintiff and Class Members.

53.    Defendant's duty to use reasonable security measures also arose under the California Consumer Privacy Act and the Confidentiality of Medical Information Act.

**C.    Defendant had an Obligation to Protect Personal and Medical Information under Federal and State Law and the Applicable Standard of Care**

54.    Defendant is an entity covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health

19

Information"),  and  Security Rule ("Security Standards for the Protection of Electronic Protected Health Information), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

55.    HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

56.    HIPAA's Security Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is held or transferred in electronic form.

57.    HIPAA requires Defendant to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

58.    "Electronic protected health information" is "individually identifiable health information . . . that is (i) Transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

59.    HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

Class Action Complaint

60.    HIPAA also required Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

61.    HIPAA also required Defendant to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

62.    The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, also required Defendant to provide notice of the breach to each affected individual "without unreasonable delay and *in no case later than 60 days following discovery of the breach*."[3]

63.    Defendant was also prohibited by the Federal Trade Commission Act ("FTC Act") (15 U.S.C. §45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g.*, *FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

64.    The FTC has established data security principles and practices for businesses as set forth in its publication, Protecting Personal Information: A Guide for Business.[4] Among other things, the FTC states that companies should encrypt information stored on

---

[3] Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for professionals/breach-notification/index.html (emphasis added).

[4] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited October 20, 2022).

Class Action Complaint

computer networks and dispose of consumer information that is no longer needed. The FTC also says to implement policies for installing vendor approved patches to correct problems, and to identify operating systems. The FTC also recommends that companies understand their network's vulnerabilities and develop and implement policies to rectify security deficiencies. Further, the FTC recommends that companies utilize an intrusion detection system to expose a data breach as soon as it occurs; monitor all incoming traffic for activity that might indicate unauthorized access into the system; monitor large amounts of data transmitted from the system and have a response plan ready in the event of a data breach. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." (17 C.F.R. § 248.201 (2013)).

65.    The FTC has prosecuted a number of enforcement actions against companies for failing to take measures to adequately and reasonably protect consumer data. The FTC has viewed and treated such security lapses as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

66.    Defendant failed to maintain reasonable data security procedures and practices.

67.    Accordingly, Defendant did not comply with state and federal statutory and regulatory requirements and industry standards, as discussed above.

Class Action Complaint

68.    Defendant was at all times fully aware of their obligations to protect the Private Information and other data of current and former patients. Defendant was also aware of the significant consequences that would result from its failure to do so.

69.    As described before, Defendant is also required (by the California Consumer Records Act ("CCRA"), CMIA and various other states' laws and regulations) to protect Plaintiff and Class members' Personal and Medical Information, and further, to handle any breach of the same in accordance with applicable breach notification statutes.

70.    In addition to their obligations under federal and state laws, Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Personal and Medical Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Breach Victims to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Personal and Medical Information of the Breach Victims.

71.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to design, maintain, and test its computer systems and email system to ensure that the Personal and Medical Information in Defendant's possession was adequately secured and protected.

72.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to create and implement reasonable data security practices and procedures to protect the Personal and Medical Information in their possession,

23

including adequately training its employees and others who accessed Personal Information within its computer systems on how to adequately protect Personal and Medical Information.

73.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to implement processes that would detect a breach on its data security systems in a timely manner.

74.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to act upon data security warnings and alerts in a timely fashion.

75.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to adequately train and supervise its employees to identify and avoid any phishing emails that make it past its email filtering service.

76.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose if its computer systems and data security practices were inadequate to safeguard individuals' Personal and Medical Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal and Medical Information with Defendant.

77.    Defendant owed a duty to Breach Victims whose Personal and Medical Information was entrusted to Defendant to disclose in a timely and accurate manner when data breaches occurred.

78.    Defendant owed a duty of care to Breach Victims because they were foreseeable and probable victims of any inadequate data security practices.

/ / /

Class Action Complaint

**D.** **A Data Breach like Defendant's Results in Debilitating Losses to Consumers**

79.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[5] Cyber criminals can leverage Plaintiff and Class members' Personal and Medical Information that was stolen in the Data Breach to commit thousands-indeed, millions-of additional crimes, including opening new financial accounts in Breach Victims' names, taking out loans in Breach Victims' names, using Breach Victims' names to obtain medical services and government benefits, using Breach Victims' Personal Information to file fraudulent tax returns, using Breach Victims' health insurance information to rack up massive medical debts in their names, using Breach Victims' health information to target them in other phishing and hacking intrusions based on their individual health needs, using Breach Victims' information to obtain government benefits, filing fraudulent tax returns using Breach Victims' information, obtaining driver's licenses in Breach Victims' names but with another person's photograph, and giving false information to police during an arrest. Even worse, Breach Victims could be arrested for crimes identity thieves have committed.

80.     Personal and Medical Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the cyber black-market for years.

81.     This was a financially motivated data breach, as the only reason cyber criminals stole Plaintiff and the Class members' Personal and Medical Information from

---

[5] "Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

Class Action Complaint

Defendant was to engage in the kinds of criminal activity described above, which will result, and has already begun to, in devastating financial and personal losses to Breach Victims.

82.    This is not just speculative. As the FTC has reported, if hackers get access to Personal and Medical Information, they *will* use it.[6]

83.    Hackers may not use the information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information **may continue for years**. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[7]

84.    For instance, with a stolen social security number, which is part of the Personal and Medical Information compromised in the Data Breach, someone can open financial accounts, get medical care, file fraudulent tax returns, commit crimes, and steal benefits.[8] Identity thieves can also use the information stolen from Breach Victims to qualify for expensive medical care and leave them and their contracted health insurers on the hook for massive medical bills.

85.    Medical identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-

---

[6] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

[7] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu (emphasis added).

[8] *See, e.g.*, Christine Di Gangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with- your-social-security-number-108597/.

Class Action Complaint

related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more "than identity thefts involving banking and finance, the government and the military, or education."[9]

86.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[10]

87.    As indicated by Jim Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place. Credit cards can be, say, five dollars or more where PHI can go from $20 say up to— we've seen $60 or $70 [(referring to prices on dark web marketplaces)]."[11] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[12]

88.    If, moreover, the cyber criminals also manage to steal financial information, credit and debit cards, health insurance information, driver's licenses and

---

[9] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[10] *Id.*

[11] ID Experts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows*, https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat

[12] *Managing cyber risks in an interconnected world*, PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015,https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global- state-of-information-security-survey-2015.pdf

Class Action Complaint

passports—as they did here—there is no limit to the amount of fraud that Defendant has exposed the Breach Victims to.

89.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[13] Almost half of medical identity theft victims lose their healthcare coverage as a result of the incident, while nearly one-third saw their insurance premiums rise, and forty percent were never able to resolve their identity theft at all.[14]

90.    As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[15]

91.    The danger of identity theft is compounded when a minor's Personal and Medical Information is compromised because minors typically have no credit reports to monitor. Thus, it can be difficult to monitor because a minor cannot simply place an alert on their credit report or "freeze" their credit report when no credit report exists.

92.    Defendant did not even offer free identity monitoring to Plaintiff and the Class. And even if it did, offering such for a limited period of time would still be insufficient. While some harm has begun already, the worst may be yet to come. There may be a time lag between when harm occurs versus when it is discovered, and also between when Personal

---

[13] *See* Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

[14] *Id.*; *see also Healthcare Data Breach: What to Know About them and What to Do After One*, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.

[15] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

Class Action Complaint

and Medical Information is stolen and when it is used. In any case, identity monitoring only alerts someone to the fact that they have already been the victim of identity theft (*i.e.*, fraudulent acquisition and use of another person's Personal and Medical Information)—it does not prevent identity theft.[16] This is especially true for many kinds of medical identity theft, for which most credit monitoring plans provide little or no monitoring or protection.

93.    As a direct and proximate result of the Data Breach, Plaintiff and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.  Plaintiff and the Class must now take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

94.    And, as noted above, Plaintiff has begun to feel the effects of this data breach. She has been receiving solicitation and other odd phone calls.

95.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

    a. Trespass, damage to, and theft of their personal property including Personal and Medical Information;

    b. Improper disclosure of their Personal and Medical Information;

---

[16] *See, e.g.*, Kayleigh Kulp, *Credit Monitoring Services May Not Be Worth the Cost*, Nov. 30, 2017, https://www.cnbc.com/2017/11/29/credit-monitoring-services-may-not-be-worth-the- cost.html.

Class Action Complaint

c. The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal and Medical Information being placed in the hands of criminals and having been already misused;

d. The imminent and certainly impending risk of having their confidential medical information used against them by spam callers to defraud them;

e. Damages flowing from Defendant's untimely and inadequate notification of the data breach;

f. Loss of privacy suffered as a result of the Data Breach, including the harm of knowing cyber criminals have their Personal and Medical Information and that fraudsters have already used that information to initiate spam calls to members of the Class;

g. Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h. Ascertainable losses in the form of deprivation of the value of customers' personal information for which there is a well-established and quantifiable national and international market;

i. The loss of use of and access to their credit, accounts, and/or funds;

j. Damage to their credit due to fraudulent use of their Personal and Medical Information; and

k. Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

Class Action Complaint

96.     Moreover, Plaintiff and the Class have an interest in ensuring that their information, which remains in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards.

97.     Despite acknowledging the harm caused by the Data Breach on Plaintiff and Class members, Defendant does nothing to reimburse Plaintiff and Class members for the injuries they have already suffered.

98.     As a result of the Data Breach and Defendant's failure to provide timely notice to Plaintiff and Class Members, Plaintiff and Class Members' Private Information and other data are now in the hands of unknown hackers, and Plaintiff and Class Members now face an imminent, heightened, and substantial risk of identity theft and other fraud, which is a concrete and particularized injury traceable to Defendant's conduct. Accordingly, Plaintiff and the Class Members have suffered "injury-in-fact." See *Attias v. CareFirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017).

99.     As a direct and proximate result of Defendant's wrongful actions and inaction, Plaintiff and Class Members have suffered injury and damages, including the increased risk of identity theft and identity fraud, improper disclosure of Private Information and other data, the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft and to deal with governmental agencies.

## V.

## <u>CLASS ACTION ALLEGATIONS</u>

100.     Plaintiff brings this action on behalf of herself, the general public, and all other persons similarly situated pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure.

Class Action Complaint

101.    Class Representative brings this action on her own behalf and on behalf of all other persons similarly situated.    The putative class that Class Representative seeks to represent is composed of:

All citizens of the State of California who provided their information to PracticeMax, Inc. on or before April 17, 2021, and who received notices from PracticeMax that their information was compromised (hereinafter the "Class").

Excluded from the Class are the natural persons who are directors, and officers, of the Defendant.  Class Representative expressly disclaims that she is seeking a class-wide recovery for personal injuries attributable to Defendant's conduct.

102.    Plaintiff is informed and believes that the total number of Class Members exceeds thousands of persons, and as such, the members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of the Class members is unknown to Class Representative at this time, such information can be ascertained through appropriate discovery, from records maintained by Defendant.

103.    There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Class Representative's claims are typical of the members of the class, and Class Representative can fairly and adequately represent the interests of the Class.

104.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

Class Action Complaint

(a)    Whether Defendant failed to adequately safeguard Plaintiff and the Class' Personal and Medical Information;

(b)    Whether Defendant failed to protect Plaintiff and the Class' Personal and Medical Information;

(c)    Whether Defendant's email and computer systems and data security practices used to protect Plaintiff and the Class' Personal and Medical Information violated the FTC Act, HIPAA, CMIA, CCRA and/or Defendant's other duties;

(d)    Whether Defendant violated the data security statutes and data breach notification statutes applicable to Plaintiff and the Class;

(e)    Whether Defendant failed to notify Plaintiff and members of the Class about the Data Breach expeditiously and without unreasonable delay after the Data Breach was discovered;

(f)    Whether Defendant engaged in unfair, unlawful, or deceptive practices by failing to safeguard Breach Victims' Personal and Medical Information properly and as promised;

(g)    Whether Defendant acted negligently in failing to safeguard Plaintiff and the Class' Personal and Medical Information, including whether its conduct constitutes negligence *per se*;

(h)    Whether Defendant entered into implied contracts with Plaintiff and the members of the Class that included contract terms requiring Defendant to protect the confidentiality of Personal and Medical Information and have reasonable security measures;

(i)    Whether Defendant violated the consumer protection statutes, data breach

33

notification statutes, and state medical privacy statutes applicable to Plaintiff and the Class;

(j)     Whether Defendant failed to notify Plaintiff and Breach Victims about the Data Breach as soon as practical and without delay after the Data Breach was discovered;

(k)     Whether Defendant's conduct described herein constitutes a breach of their implied contracts with Plaintiff and the Class;

(l)     Whether Plaintiff and the members of the Class are entitled to damages as a result of Defendant's wrongful conduct;

(m)     What equitable relief is appropriate to redress Defendant's wrongful conduct; and

(n)     What injunctive relief is appropriate to redress the imminent and currently ongoing harm faced by Plaintiff and members of the Class.

105.    Class Representative's claims are typical of those of the other Class members because Class Representative, like every other Class member, was exposed to virtually identical conduct and are entitled to nominal damages of one thousand dollars ($1,000) per violation pursuant to Civil Code §§ 56.101 and 56.36(b)(1).

106.    Class Representative will fairly and adequately protect the interests of the Class.  Moreover, Class Representative has no interest that is contrary to or in conflict with those of the Class she seeks to represent during the Class Period.  In addition, Class Representative has retained competent counsel experienced in class action litigation to further ensure such protection and intend to prosecute this action vigorously.

107.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the Defendant in the States of California and Arizona and would lead to repetitious trials of the numerous common questions of fact and law in the States of California and Arizona.    Class Representative knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.  As a result, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

108.    Proper and sufficient notice of this action may be provided to the Class members through direct mail.

109.    Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class.  Absent certification of this action as a class action, Class Representative will continue to be damaged by the unauthorized release of their individual identifiable medical information.

## VI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violations of the Confidentiality of Medical Information Act, Civil Code § 56, *et seq.*)**

(Against All Defendants)

110.    Plaintiff and the Class incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

111.    The California's Confidentiality of Medical Information Act ("CMIA") prohibits, among other things, unauthorized disclosure of private medical information. Cal. Civ. Code §§ 56, et seq.

112.    Plaintiff and the Class Members provided their PHI to Defendant, a "health care practitioner" who is a "provider of health care," within the meaning of Civil Code §§56.05(m), 56.06(a) and/or 56.06(b), a "contractor" within the meaning of Civil Code §56.05(d), a "recipient" under Civil Code §56.13, or an administrator under Civil Code §56.26, and maintained and continues to maintain "medical information," within the meaning of Civil Code § 56.05(j), of "patients" of the Defendant, within the meaning of Civil Code § 56.05(k).

113.    Plaintiff and the Class are "patients" within the meaning of Civil Code § 56.05(k).  Furthermore, Plaintiff and the Class, as patients of Defendant, or its contracting entity, had their individually identifiable "medical information," within the meaning of Civil Code § 56.05(j), stored onto Defendant's server through their health care providers, on or before April 17, 2021.

114.    Defendant is a "provider of health care" subject to the CMIA because it is a "business that offers software or hardware to consumers, . . . that is designed to maintain medical information" in order to make the information available to an individual or a health care provider to which Plaintiff and the Class Members provided their PHI. Cal. Civ. Code § 56.06(b).

115.    Defendant stored in electronic form on its computer system Plaintiff and the Class Members' "medical information" as defined by Cal. Civ. Code § 56.05(j).

116.    Defendant's systems were designed, in part, to make information available to the health care providers by providing business and technology solutions through which those health care providers could store, access, and manage current and former patients' Private Information including PHI.

117.    Plaintiff and the Class Members did not provide PracticeMax authorization nor was PracticeMax otherwise authorized to disclose Plaintiff and the Class Members' PHI to an unauthorized third-party.

118.    On or about May 1, 2021, Defendant determined that the illegally accessed files involved Plaintiff and the Class members' individual identifiable "medical information," within the meaning of Civil Code § 56.05(j),[17] including Plaintiff and the Class members' "name, date of birth, diagnosis, physician's name, medical record number, treatment information, and patient account number."

119.    Defendant was made aware of an unusual activity involving certain of its electronic files.  Defendant immediately commenced an investigation to quickly assess the security of its systems. Through the investigation, Defendant determined that certain files were accessed and acquired between April 17, 2021 and May 5, 2021 without authorization.

---

[17]  Pursuant to Civil Code § 56.05(j), "Medical information" means "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care...regarding a patient's medical history, mental or physical condition, or treatment.  'Individually Identifiable' means that the medical information includes or contains any elements of personal identifying information sufficient to allow identification of the individual, such as the patient's name, address, electronic mail address, telephone number, or social security number, or other information that, alone or in combination with other publicly available information, reveals the individual's identity." As alleged herein, Defendant's unencrypted server contained Plaintiff's and the Class members' names, dates of birth, and prescription information, and thus contained individually identifiable medical information as defined by Civil Code § 56.05(j)

Class Action Complaint

During its investigation, Defendant determined that the information of certain individuals were present in the relevant files.

120.    As described throughout this Complaint, PracticeMax negligently maintained, disclosed and released Plaintiff and the Class Members' PHI inasmuch as it did not implement adequate security protocols to prevent unauthorized access to medical information, maintain an adequate electronic security system to prevent data breaches, or employ industry standard and commercially viable measures to mitigate the risks of any data the risks of any data breach or otherwise comply with HIPAA data security requirements.

121.    As a direct and proximate result of PracticeMax' negligence, it disclosed and released Plaintiff and the Class Members' PHI to an unauthorized third-party.

122.    PracticeMax' unauthorized disclosure of PHI has caused injury to the Plaintiff and the Class Members.

123.    Upon information and belief, Plaintiff and the Class Members' PHI was viewed by an unauthorized third party.

124.    As a result of Defendant's above-described conduct, Plaintiff and the Class have suffered damages from the unauthorized release of their individual identifiable "medical information" made unlawful by Civil Code §§ 56.10 and 56.101.

125.    Because Civil Code § 56.101 allows for the remedies and penalties provided under Civil Code § 56.36(b), Plaintiff, individually and on behalf of the Class, seeks actual, nominal (including $1000 nominal damages per disclosure under § 56.36(b)), and statutory damages (including under § 56.36(c)) where applicable, together with reasonable attorneys' fees and costs; and Plaintiff individually seeks actual damages suffered, if any, pursuant to Civil Code § 56.36(b)(2).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SECOND CAUSE OF ACTION**

**(Violations of the CALIFORNIA UNFAIR COMPETITION LAW, Cal. Bus. & Prof. Code §17200, *et seq.*)**

126.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

127.    Defendant does business in California. Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, the following:

   a.  by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard their Personal and Medical Information from unauthorized disclosure, release, data breach, and theft; representing and advertising that they did and would comply with the requirement of relevant federal and state laws pertaining to the privacy and security of the Class' Personal and Medical Information; and omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Class' Personal and Medical Information;

   b.  by soliciting and collecting Class members' Personal and Medical Information with knowledge that the information would not be adequately

protected; and by storing Plaintiff and Class members' Personal and Medical Information in an unsecure electronic environment;

c. by failing to disclose the Data Breach in a timely and accurate manner, in violation of Cal. Civ. Code §1798.82;

d. by violating the privacy and security requirements of HIPAA, 42 U.S.C. §1302d, *et seq.*;

e. by violating the CMIA, Cal. Civ. Code § 56, *et seq.*; and

f. by violating the CCRA, Cal. Civ. Code § 1798.82.

128.    These unfair acts and practices were immortal, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and Class members. Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected by laws like the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1302d, *et seq.*, CMIA, Cal. Civ. Code § 56, *et seq.*, and the CCRA, Cal. Civ. Code § 1798.81.5.

129.    As a direct and proximate result of Defendant's unfair and unlawful practices and acts, Plaintiff and the Class were injured and lost money or property, including but not limited to the overpayments Defendant received to take reasonable and adequate security measures (but did not), the loss of their legally protected interest in the confidentiality and privacy of their Personal and Medical Information, and additional losses described above.

130.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff and Class members' Personal and Medical Information and that the risk of a data breach or theft was highly likely.

40

Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class.

131.    The conduct and practices described above emanated from California where decisions related to Defendant's advertising and data security were made.

132.    Plaintiff seeks relief under the UCL, including restitution to the Class of money or property that the Defendant may have acquired by means of Defendant's deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. P. § 1021.5), and injunctive or other equitable relief.

## **THIRD CAUSE OF ACTION**

**(Violations of the CALIFORNIA CONSUMER RECORDS ACT, Cal. Civ. Code § 1798.82, *et seq.*)**

133.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

134.    Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

135.    The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

136.    Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

a. The security breach notification shall be written in plain language;

b. The security breach notification shall include, at a minimum, the following information:

i. The name and contact information of the reporting person or business subject to this section;

ii. A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

iii. If the information is possible to determine at the time the notice is provided, then any of the following:

1.  The date of the breach;

2. The estimated date of the breach; or

3.  The date range within which the breach occurred. The notification shall also include the date of the notice.

iv. Whether notification was delayed as a result of law enforcement investigation, if that information is possible to determine at the time the notice is provided;

v. A general description of the breach incident, if that information is possible to determine at the time the notice is provided; and

vi. The toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

137. The Data Breach described herein constituted a "breach of the security system" of Defendant.

138. As alleged above, Defendant unreasonably delayed informing Plaintiff and Class members about the Data Breach, affecting their Personal and Medical Information, after Defendant knew the Data Breach had occurred.

139. Defendant failed to disclose to Plaintiff and the Class, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, Personal and Medical Information when Defendant knew or reasonably believed such information had been compromised.

140. Defendant's ongoing business interests gave Defendant incentive to conceal the Data Breach from the public to ensure continued revenue.

141. Upon information and belief, no law enforcement agency instructed Defendant that timely notification to Plaintiff and the Class would impede its investigation.

142. As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a credit freeze. These measures could have prevented some of the damages

Class Action Complaint

suffered by Plaintiff and Class members because their stolen information would have had less value to identity thieves.

143.    As a result of Defendant's violation of Cal. Civ. Code § 1798.82, Plaintiff and the Class suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

144.    On the other hand, Cal. Civ. Code §1798.81.5 requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

145.    Defendant committed violations of Cal. Civ. Code §1798.81.5, including but not limited to by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the Private Information and other data entrusted to it, including Plaintiff and the Class Members' Private Information and other data as aforesaid.

146.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798.81.5, Plaintiff and the Class Members' Private Information and other data were disclosed to third parties without authorization, causing and will continue to cause Plaintiff and the Class Members damages.

147.    As a direct and proximate result of Defendant's violation of Cal. Civ. Code §1798.81.5, Plaintiff and the Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering

44

benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

148.    The above constitutes violation of Cal. Civ. Code §1798.81.5.

149.    Plaintiff and the Class seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiff and the other Class members as alleged above and equitable relief.

150.    Defendant's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Defendant conducted with the intent on the part of Defendant of depriving Plaintiff and the Class of "legal rights or otherwise causing injury." In addition, Defendant's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c) in that it was despicable conduct carried on by Defendant with a willful and conscious disregard of the rights or safety of Plaintiff and the Class and despicable conduct that has subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights. As a result, Plaintiff and the Class are entitled to punitive damages against Defendant under Cal. Civ. Code § 3294(a).

/ / /

Class Action Complaint

# **FOURTH CAUSE OF ACTION**

## **(NEGLIGENCE)**

151.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

152.    Defendant required Plaintiff and Class Members to submit non-public, sensitive PII and other data via its contracts with the respective health care providers.

153.    Defendant had, and continues to have, a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their Private Information and other data. Defendant also had, and continues to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the collection, storage and protection of Private Information and other data within their possession, custody and control and that of its vendors.

154.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and patients and former patients. The special relationship arose because Plaintiff and the Members of the Class had entrusted Defendant with their Private Information and other data by virtue of being patients at the respective health care providers with which Defendant had contracted to provide services. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiff and the Class Members from a data breach.

155.    Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and

software and hardware systems to safeguard and protect the Private Information and other data entrusted to it, including Plaintiff and Class Members' Private Information and other data as aforesaid. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information and other data by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff and Class Members' Private Information and other data.

156.    Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiff and Class Members by, inter alia, failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class Members' Private Information and other data within their possession, custody and control.

157.    Defendant, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their Private Information and other data.

158.    But for Defendant's negligent breach of the above-described duties owed to Plaintiff and Class Members, their Private Information and other data would not have been released, disclosed, and disseminated without their authorization.

159.    Plaintiff and Class Members' Private Information and other data was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Defendant's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiff and Class Members' Private Information and other data.

160.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class Members have suffered, and will continue to suffer, ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts; decreased credit scores and ratings; lost work time; and other economic and noneconomic harm.

161.    Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this Data Breach constitute negligence.

162.    Plaintiff is entitled to compensatory and consequential damages suffered as a result of the Data Breach.

163.    Plaintiff is also entitled to injunctive relief requiring PracticeMax to, e.g., (i) strengthen its data security programs and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide robust and adequate credit monitoring to all Class Members, and any other relief this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### (NEGLIGENCE PER SE)

164.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

165.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiff and Class Members.

166.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information and other data of Plaintiff and Class Members. The pertinent FTC publications and orders form part of the basis of Defendant's duty in this regard.

167.    Defendant required, gathered, and stored personal and financial information of Plaintiff and Class Members to fulfill its contracts with the various and several health care providers.

168.    Defendant violated the FTCA by failing to use reasonable measures to protect the Private Information and other data of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

49

169.    Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

170.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

171.    As a direct and proximate result of Defendant's negligence per se, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering unemployment benefits; potentially defending themselves from legal action base upon fraudulent applications for unemployment benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

172.    Defendant's violation of the FTCA constitutes negligence per se.

173.    For the same reasons and upon the same bases, Defendant's violation of the California Consumer Privacy Act, the California Customer Records Act, and various other State and local statutes, constitutes negligence per se.

174.    As a direct and proximate result of Defendant's violation of the foregoing statutes and regulations, Plaintiff and Class Members have suffered injury and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### (BREACH OF CONTRACT)

175.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

176.    Defendant required, gathered, and stored Private Information and other data of Plaintiff and Class Members to fulfill its contracts with the various and several health care providers.

177.    There was offer, acceptance and consideration, the consideration being the fees paid by the various and several health care providers for Defendant's services, including the provisions of those agreements pertaining to the protection of patients' and former patients' Private Information and other data.

178.    The various and several health care providers have performed and satisfied all of their obligations to Defendant pursuant to their contracts. Defendant breached its contractual obligations to protect the patients' and former patients' Private Information and other data it possessed and with which it was entrusted when the information was accessed by unauthorized persons as part of the Data Breach.

179.    Plaintiff and Class Members were foreseeable third-party beneficiaries of said contracts.

180.    As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from

51

identify theft; from their needing to contact health care providers; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their names; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identity theft, which may take months or years to discover and detect.

181.   The above constitutes breach of contract by Defendant.

182.   The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

183.   Defendant required, gathered, and stored Private Information and other data of Plaintiff and Class Members to fulfill its contracts with the various and several health care providers.

184.   By virtue of the above, Defendant entered into implied contracts with Plaintiff and Class Members by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and Class Members if their data had been breached and compromised or stolen. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

185.   Defendant breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect patients' and former patients' Private

Information and other data, and by failing to provide timely and accurate notice to them that Private Information and other data was compromised as a result of the Data Breach.

186.    As a direct and proximate result of Defendant's breach of implied contract, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for unemployment benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

187.    The above constitutes breach of implied contract by Defendant.

188.    Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses.

## **SEVENTH CAUSE OF ACTION**

### **(MISREPRESENTATION)**

189.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

190.    A special, privity-like relationship existed between Defendant and Plaintiff and Class Members herein because Plaintiff and the Members of the Class entrusted Defendant with their Private Information and other data by virtue of being patients at the

53

respective health care providers with which Defendant had contracted to provide services, and by virtue of Federal, State and local statutes and regulations.

191.    The Defendant incorrectly represented to Plaintiff and Class Members that they would take appropriate measures to safeguard their Private Information and other data and promptly notify them of a data breach.

192.    Plaintiff and Class Members reasonably relied upon said representations in that they held Defendant in a position of trust as guardians of their Private Information and other data.

193.    As a direct and proximate result of Defendant's misrepresentation, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

194.    The above constitutes misrepresentation on the part of Defendant.

/ / /

/ / /

Class Action Complaint

**EIGHTH CAUSE OF ACTION**

**(BREACH OF FIDUCIARY DUTY)**

195.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

196.    A fiduciary relationship existed between Plaintiff and Class Members and Defendant, in that Defendant was in a position of trust with respect to Plaintiff and Class Members by virtue of being patients at the respective health care providers with which Defendant had contracted to provide services, and by virtue of Federal, State and local statutes and regulations.

197.    Defendant owed a duty to Plaintiff and Class Members to insure that the Private Information and other data entrusted to them was safeguarded pursuant to common law and statute.

198.    The Defendant engaged in misconduct, consisting of the failure to safeguard the Private Information and other data of Plaintiff and Class Members that had been entrusted to them, in violation of the duty to exercise due care, their contractual obligations and their statutory obligations pursuant to the Federal Trade Commission Act ("FTCA"), the California Consumer Privacy Act, the California Customer Records Act,  and various other State and local statutes, constitutes negligence per se.

199.    As a direct and proximate result of Defendant's breach of fiduciary duty, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from identify theft; from their needing to contact agencies administering benefits; potentially defending themselves from legal action base upon fraudulent applications for benefits made in their name; contacting their financial institutions; loss of use of funds; closing or

modifying financial accounts; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives; closely reviewing and monitoring their accounts for unauthorized activity which is certainly impending; placing credit freezes and credit alerts with credit reporting agencies; and damages from identify theft, which may take months or years to discover and detect.

200.    As a direct and proximate result of Defendant's breach of their fiduciary duty, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, and other economic and non-economic losses.

201.    The above constitutes breach of fiduciary duty on the part of Defendant.

## NINTH CAUSE OF ACTION

## (INVASION OF PRIVACY)

202.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

203.    Plaintiff and the Class Members have a legally protected privacy interest in their Private Information, which is and was collected, stored and maintained by Defendant, and they are entitled to the reasonable and adequate protection of their Private Information against foreseeable unauthorized access, as occurred with the Data Breach.

204.    Plaintiff and the Class Members reasonably expected that Defendant would protect and secure their Private Information from unauthorized parties and that their Private Information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

205.    The Defendant unlawfully invaded the privacy rights of Plaintiff and the Class Members by engaging in the conduct described above, including by failing to protect their

Class Action Complaint

Private Information by permitting unauthorized third-parties to access, exfiltrate and view this Private Information. Likewise, Defendant further invaded the privacy rights of Plaintiff and Class Members, and permitted cybercriminals to invade the privacy rights of Plaintiff and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what Private Information had been accessed, exfiltrated, and viewed by unauthorized third-parties.

206.   This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiff and Class Members' Private Information, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

207.   Plaintiff and Class Members' Private Information is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiff and Class Members' Private Information, and such information is otherwise protected from exposure to the public by various statutes, regulations and other laws.

208.   The disclosure of Plaintiff and Class Members' Private Information to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

209.   Defendant's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiff and Class Members' Private Information is such that it would cause serious mental injury, shame or humiliation to people of ordinary sensibilities.

Class Action Complaint

210.   The unauthorized access, exfiltration, and disclosure of Plaintiff and Class Members' Private Information was without their consent, and in violation of various statutes, regulations and other laws.

211.   As a result of the invasion of privacy caused by Defendant, Plaintiff and Class Members suffered and will continue to suffer damages and injury as set forth herein.

212.   Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the Court to grant Plaintiff and the Class members the following relief against Defendant:

a.     An order certifying this action as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.     A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual and statutory damages, including statutory damages under the CMIA, punitive damages, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.     An order providing injunctive and other equitable relief as necessary to protect the interests of the Class as requested herein, including, but not limited to:

i.     Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to

conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.   Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

iii.   Ordering that Defendant audit, test, and train their security personnel regarding any new or modified procedures;

iv.   Ordering that Defendant's segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.   Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

vi.   Ordering that Defendant conduct regular database scanning and securing checks;

vii.   Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

viii.   Ordering Defendant to meaningfully educate its current, former, and prospective employees and subcontractors about the threats they face

as a result of the loss of their financial and personal information to third

parties, as well as the steps they must take to protect themselves.;

d.       An order requiring Defendant to pay the costs involved in notifying the Class

members about the judgment and administering the claims process;

e.       A judgment in favor of Plaintiff and the Class awarding them pre-judgment

and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by

law, including the CCRA, Cal. Civ. Code § 1798.84(g), UCL, Cal. Bus. & Prof. Code §

17082, CMIA, Cal. Civ. Code 56.35; and

f.       An award of such other and further relief as this Court may deem just and

proper.

**KNAPP & ROBERTS, P.C.**
**POTTER HANDY LLP**

Dated: November 21, 2023          By:   */s/ Craig A. Knapp*
                                                        Craig A. Knapp, Esq.
                                                        James M. Treglio, Esq.
                                                        *Attorneys for the Plaintiff and the Class*

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff and the Class hereby demand a jury trial on all causes of action and claims

with respect to which they have a right to jury trial.

**KNAPP & ROBERTS, P.C.**
**POTTER HANDY LLP**

Dated: November 21, 2023          By:   */s/ Craig A. Knapp*
                                                        Craig A. Knapp, Esq.
                                                        James M. Treglio, Esq.
                                                        *Attorneys for the Plaintiff and the Class*

Class Action Complaint